UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GIBSON FOUNDATION, INC., A DELAWARE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ROB NORRIS D/B/A THE PIANO MILL, A CITIZEN OF MASSACHUSETTS,<br><br>Defendant. | CASE NO. 3:19-CV-1109 |

**MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL FOR DEFENDANT AND STAY FURTHER PROCCEDINGS**

Plaintiff Gibson Foundation, Inc. ("The Foundation") hereby files its Memorandum in Support of its Motion to Disqualify Counsel for Defendant and Stay Further Proceedings, respectfully showing the Court as follows:

**I.   Introduction and Relevant Facts.**

On December 11, 2019, The Foundation filed a Complaint against Rob Norris d/b/a The Piano Mill ("Piano Mill"). [*See* Complaint at Doc. No. 1] The Complaint included causes of action for breach of contract, breach of bailment, and conversion arising from Piano Mill's refusal to timely return a Liberace piano loaned to it. [*See Id.*]

The Foundation is an affiliate of Gibson Brands, Inc. ("Gibson") as the entity through which Gibson and other related affiliates perform and participate in charitable activities. Gibson funds the Foundation. [*See* Erin Chegwidden Declaration at ¶ 3 ("Chegwidden Dec.") attached as Exhibit "**A**".] The Foundation's executive director is an employee of Gibson and the Chairman of The Foundation's Board is the CEO of Gibson. [*See* Chegwidden Dec. at ¶¶ 4-5.] Since 2002, The Foundation has provided thousands of guitars and donations in excess of $30 million. [*See* Chegwidden Dec. at ¶ 6.] Often, The Foundation uses Gibson's counsel, both internal and outside,

to represent it on legal issues that arise.  [*See* Chegwidden Dec. at ¶ 8.]  The Foundation shares the same executive floor as Gibson; it also shares the same legal and financial teams.  [*See Id.*]

On January 24, 2020, Piano Mill filed a Motion to Dismiss The Foundation's Complaint based on a lack of personal jurisdiction and improper venue.  [*See* Motion to Dismiss at Doc. No. 9.]  To The Foundation's surprise, Jonathan Cole of the firm Baker, Donelson, Bearman, Caldwell, & Berkowitz, P.C. ("Baker Donelson") signed the Motion to Dismiss as representatives of Piano Mill.  [*See Id.*]  Baker Donelson has served as Gibson's employment counsel since 2006.  [*See* Chegwidden Dec. at ¶ 10.]  In addition to counseling Gibson and its executives on employment law matters, Baker Donelson has represented Gibson in: 1) securing the opening of its Gibson Café in the Nashville airport, 2) negotiating with Gibson's insurance company to cover damages to Gibson's Memphis factory, 3) defending Gibson against an age discrimination suit brought by a former CFO of Gibson, 4) pursuing a Gibson employee leaking confidential information to Gibson's creditors, and 5) purchasing a dance hall.  [*See Id.* at ¶¶ 11-17.]  In fact, when Gibson entered Chapter 11 bankruptcy on May 1, 2018, Baker Donelson was listed and approved as an "ordinary course professional" ("OCP") in Gibson's Chapter 11 bankruptcy proceedings initiated on May 1, 2018.  [*See Id.* at ¶ 18.]  This OCP legal counsel was determined to be *necessary* in providing support in the day-to-day operations during the bankruptcy and was allowed to continue to work for Gibson during the bankruptcy.  [*See Id.*]

Gibson is under the impression that Baker Donelson continues to represent Gibson in employment and other legal matters making Gibson a current client of Baker Donelson.  [*See Id.* at ¶ 20.]  Baker Donelson has given Gibson no indication that it wishes to end its decades long legal relationship with Gibson.  [*See Id.*]  Not only has Gibson not given its informed consent to Baker Donelson to represent a directly adverse client, Baker Donelson did not even breach the subject with Gibson.  [*See Id.* at ¶ 21.]

2

Because The Foundation is inextricably linked with Gibson and the extensive legal representation Baker Donelson has previously provided to Gibson, The Foundation should be considered a current client of Baker Donelson.  As The Foundation is a current client, Baker Donelson has a concurrent conflict of interest in representing Piano Mill that The Foundation has not consented to.  As such, Baker Donelson should be disqualified from representing Piano Mill in this action.  Even if The Foundation is considered a former client of Baker Donelson, Baker Donelson should be disqualified from representing Piano Mill in this action.  This is a substantially related matter in which there is a substantial risk that confidential factual information provided to Baker Donelson in its past representation of Gibson would materially advance Piano Mill's position in this action.

## II.     Argument and Citation to Authority.

A motion to disqualify is the proper mechanism for bringing an alleged breach of ethical rules to the attention of the court.  *Bartech Indus., Inc. v. Int'l Baking Co., Inc.,* 910 F.Supp. 388, 392 (E.D. Tenn. 1996).  Motions to disqualify require the court to exercise its judgment "with an eye toward 'upholding the highest ethical standards of the profession, protecting the interest of the litigants in being represented by the attorneys of their choosing, protecting the loyalty and confidences [of clients], and the overriding societal interests in the integrity of the judicial process.'" *McKinney v. McMeans,* 147 F.Supp.2d 898, 900 (W.D. Tenn. 2001) (quoting *Bartech,* 910 F.Supp. at 392).  The decision of whether to disqualify counsel is a matter of discretion.  *Grain v. Trinity Health,* 431 F. App'x 434, 447 (6th Cir. 2011); *Moses v. Sterling Commerce (Am.), Inc.,* 122 F. App'x 177, 183 (6th Cir. 2005).  The Sixth Circuit has stated that the standard "is a 'generous one'" and that "[t]he district court is to be given 'wide latitude' in making such determinations,'" such that its "decision will be upheld unless 'arbitrary' or 'without adequate reasons.'" *United States v. Swafford,* 512 F.3d 833, 839 (6th Cir.2008) (citation omitted).

Gibson has had a substantial legal relationship with Baker Donelson. This legal relationship was so significant that it was determined to be necessary in providing Gibson support in the day-to-day operations during the bankruptcy proceedings. A "more lenient standard [applies] to successive representation." *Garland v. Ford Motor Co.*, No. 2:12-00121, 2015 WL 1401030, at *6 (M.D. Tenn. Mar. 26, 2015) (citing *Filippi v. Elmont Union Free Dist. Bd. of Ed.,* 722 F.Supp.2d 295, 305 n. 2 (E.D.N.Y.2010)). The duty of loyalty to a client and the protection of client confidences are matters of paramount importance. *Garland,* 2015 WL 1401030, at *9 (M.D. Tenn. Mar. 26, 2015). "The lawyer who would sue his own client, asserting in justification the lack of substantial relationship between the litigation and the work he has undertaken to perform for that client, is leaning on a slender reed indeed.' " *Id.* at *8 (quoting *GSI Commerce Solutions, Inc. v. BabyCenter, LLC*, 618 F.3d 204, 210 (2d Cir. 2010)).

### A.   Baker Donelson's Extensive Representation of Gibson Creates a Corporate Affiliate Conflict with The Foundation.

Through Baker Donelson's legal relationship with Gibson, The Foundation is a current client of Baker Donelson. "A lawyer who represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary." Tennessee Code of Professional Responsibility ("Rules") 1.7, cmt. 33. An affiliate should not be considered a current client "unless the circumstances are such that the affiliate should also be considered a client of the lawyer, there is an understanding between the lawyer and the organizational client that the lawyer will avoid representation adverse to the client's affiliates, or the lawyer's obligations to either the organizational client or the new client are likely to limit materially the lawyer's representation of the other client." *Id.* In this instance, the circumstances are such that The Foundation should be considered a client of Baker Donelson.

The ABA discussed this subject further in a 1995 Opinion Letter, concluding that "whether a lawyer represents a corporate affiliate of his client ... depends not upon any clearcut per se rule but

4

rather upon the particular circumstances." *See Am. Bar Ass'n Comm. on Prof'l. Ethics*, Formal Opinion 95–390 (1995), reprinted in ABA/BNA Lawyers Manual on Prof'l. Conduct Ethics Opinions 1991–95, pp. 1001:262 (1996).  In determining whether a corporate affiliate conflict exists, "courts have generally focused on: (i) the degree of operational commonality between affiliated entities, and (ii) the extent to which one depends financially on the other." *See GSI Commerce*, 618 F.3d at 210.  As to operational commonality, courts have considered the extent to which entities rely on a common infrastructure." *See Id.; see, e.g., Discotrade Ltd. v. Wyeth–Ayerst Int'l, Inc.,* 200 F.Supp.2d 355, 359 (S.D.N.Y.2002) (corporate affiliates deemed single entity where each used the same computer network, e-mail system, travel department, and health benefit plan); *see also Eastman Kodak Co. v. Sony Corp.,* Nos. 04–CV–6095, 04–CV–6098, 2004 WL 2984297, at *3–4 (W.D.N.Y. Dec. 27, 2004) (corporate affiliates deemed single entity based on, *inter alia,* integration of technology systems).  The Foundation and Gibson share the same building, employees and executive teams. [*See* Chegwidden Dec. at ¶¶ 4-5, 7.]

Courts have also looked at the extent to which the affiliated entities rely on or share common personnel such as managers, officers, and directors.  *See, e.g., Certain Underwriters at Lloyd's, London,* 264 F.Supp.2d at 923 (substantial overlap in management); *Eastman Kodak,* 2004 WL 2984297, at *4 (shared directors, officers and legal department); *Discotrade Ltd.,* 200 F.Supp.2d at 359 (same board, directors and President).  The Foundation's executive director is an employee of Gibson and the Chairman of The Foundation's Board is the CEO of Gibson.  [*See* Chegwidden Dec. at ¶ 4.]  Similar to the above collection of cases, The Foundation and Gibson have significant common personnel.

When reviewing financial interdependence, courts have considered what significance an adverse outcome in the action would result in substantial and measurable loss to the current client. *See Hartford Accident & Indem. Co. v. RJR Nabisco, Inc.,* 721 F.Supp. 534, 540 (S.D.N.Y.1989).  Some

courts have even held that a wholly owned subsidiary, by itself, is enough to establish an affiliate conflict. *See Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB,* 944 F.Supp. 341, 346 (D.N.J. 1996) ("[T]here is sufficient case law which supports the proposition that, for conflict purposes, representation of a subsidiary corporation is equivalent to representation of its parent, and vice-versa...."); *see also Stratagem Dev. Corp. v. Heron Int'l N.V.,* 756 F.Supp. 789, 792 (S.D.N.Y.1991) (treating the entities as one client because "the liabilities of a [wholly-owned] subsidiary corporation directly affect the bottom line of the corporate parent"). The Foundation is wholly owned by Gibson and completely dependent on Gibson for its financing. Any adverse decision affecting the finances of The Foundation would also have a significant impact on Gibson's finances.

As The Foundation and Gibson have substantial managerial, operational, and financial commonality, Baker Donelson's conflict with Gibson should be imputed onto The Foundation. Baker Donelson's concurrent representation adverse to The Foundation "reasonably diminishes the level of confidence and trust in counsel held by [Gibson]. *See Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.,* 264 F.Supp.2d 914, 922 (N.D.Cal. 2003) (internal quotation marks omitted); *see also Discotrade*, 200 F.Supp.2d at 358–59; *Hartford Accident*, 721 F.Supp. at 540–41.

### B. Gibson, and Therefore The Foundation, is a Current Client of Baker Donelson.

Gibson is a current client of Baker Donelson and under the entity theory of representation; The Foundation is also a current client of Baker Donelson. As detailed above, Baker Donelson has successively represented Gibson in many matters in the past. Gibson still considers itself a client of Baker Donelson. [*See* Chegwidden Dec. at ¶ 20.] The lawyer-client relationship was important enough that Baker Donelson was determined to be necessary in providing Gibson support in the day-to-day operations during its bankruptcy pendency. [*See Id.* at ¶ 18.] Baker Donelson has not notified Gibson that the relationship is terminated. [*See Id.*] This continuous relationship without termination supports the notion that Gibson is a current client of Baker Donelson. *See e.g. Int'l Bus.*

*Machines Corp. v. Levin*, 579 F.2d 271 (3d Cir. 1978) ("Although [the firm] had no specific assignment from IBM on hand . . . and even though [the firm] performed services for IBM on a fee for service basis rather than pursuant to a retainer agreement, the pattern of repeated retainers… supports the finding of a continuous relationship."); *see also Oxford Systems, Inc. v. Cellpro, Inc.*, 45 F.Supp. 2d 1055 (W.D. Wash. 1999) (holding the company was a current client despite nothing pending for a year because of company's General Counsel's subjective belief that it was a current client). Therefore, this disqualification motion should be determined as if The Foundation is a current client of Baker Donelson.

Pursuant to Local Rule 83.01(e)(4), attorneys appearing before courts in this District are held to the standards set forth in the Tennessee Code of Professional Responsibility. Rule 1.7 governs conflicts of interest with current clients. The Rule prohibits a lawyer from representing a client if there would be "a concurrent conflict of interest," which exists where "the representation of one client will be directly adverse to another client," or where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." Tenn. Sup.Ct. R. 8, Rule 1.7(a). "[I]n most cases concurrent representation in violation of Rule 1.7 will result in disqualification." *Garland*, 2015 WL 1401030, at *9. By representing the Piano Mill, Baker Donelson is directly adverse to The Foundation. The Foundation has not given Baker Donelson informed consent to represent Piano Mill in this action and therefore should be disqualified under Rule 1.7.

**C.      In the Alternative, Baker Donelson Should be Disqualified if The Foundation is Considered a Former Client.**

In the alternative to The Foundation being viewed as a current client, Baker Donelson should be disqualified based on The Foundation being classified as a former client. "[M]otions to disqualify counsel for conflicts of interest with former clients are governed by two intertwined sources of authority—the state rules of professional responsibility and federal common law under

7

the test elucidated by the Sixth Circuit in *Dana Corp.*" *Jordan v. Kohl's Dep't Stores, Inc.,* No. 3:10–cv–0051, 2010 U.S. Dist. LEXIS 134060, at *10, 2010 WL 5279917 (M.D. Tenn. Dec. 17, 2010) (citations omitted). In *Dana Corp.,* the Sixth Circuit expressed a three-part test to determine if an attorney should be disqualified from a particular matter: "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio,* 900 F.2d 882, 889 (6th Cir.1990).

> Rule 1.9 provides that:
>
> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents in writing after consultation.
>
> (b) Unless the former client consents in writing after consultation, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter.
>
> (c) Unless the former client consents after consultation, a lawyer who has formerly represented a client in a matter, or whose present or former firm has formerly represented a client in a matter, shall not thereafter:
>
>> (1) use information relating to the representation to the disadvantage of the former client except as these Rules otherwise permit or require with respect to a client, or when the information has become generally known; or
>> (2) (2) reveal information relating to the representation of the former client except as these Rules otherwise permit or require with respect to a client.

Tenn. Sup.Ct. R. 8, Rule 1.9.

Both *Dana Corp.* and Rule 1.9 require a substantially related matter and the acquisition of confidential information from the former client. A "substantially related matter" is defined as one that:

> involve[s] the same transaction or legal dispute or other work the lawyer performed for the former client if there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter, unless that information has become generally known.

Tenn. Sup.Ct. R. 8, Rule 1.9 cmt. 3. "The substantial relationship test attempts to avoid requiring actual disclosure of confidential information by focusing upon the general features of the matters involved and inferences as to the likelihood that confidences were imparted by the former client that could be used to adverse effect in the subsequent representation." Rule 1.9 cmt. 3(e). Because of this, "a preliminary conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." *Id*.

Baker Donelson has represented Gibson–and therefore The Foundation under the entity theory–on various contractual disputes over the years. As a result, Baker Donelson is intimately familiar on how Gibson approaches contractual formation and obligations. The dispute with Piano Mill is substantially similar as there is a substantial risk the confidential information provided by Gibson in past representation on contractual disputes would materially alter The Foundation's position in this action. For example, one of the main factual disputes in this case is whether Gibson formed a bailment contract with Piano Mill or transferred ownership of the Liberace piano. [*See generally* Complaint at Doc. No. 1.] Hypothetically, if as part of its past representation of Gibson, Baker Donelson should know, based on the confidential information obtained in its past representation of Gibson, that Gibson requires a formal contract in writing for all of its bailments, then as part of this hypothetical, this would evidence that there was maybe no bailment contract unless Gibson could produce a written contract.

### D. The Foundation Requests This Court Stay Further Proceedings.

The power of a court to stay proceedings is " 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.' " *Esperson v. Trugreen Ltd. P'ship,* No. 10–2130–STA, 2010 U.S. Dist. LEXIS 64637, at *4, 2010 WL 2640520 (W.D. Tenn. June 29, 2010) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). A court should consider three factors when considering a motion to stay: '(1) potential prejudice to the non-moving party; (2) hardship and inequality to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by the stay.'" *Melville Capital, LLC v. Tennessee Commerce Bank*, No. 3:11-CV-00888, 2011 WL 6026599, at *1 (M.D. Tenn. Dec. 2, 2011).

This case is at its infancy with no Answer having been filed. As such, a stay pending the resolution of this Motion will not prejudice Piano Mill. On the contrary, The Foundation could be significantly prejudiced if Baker Donelson discloses the confidential information obtained in its past systemic legal relationship with Gibson to Piano Mill. A stay in the proceedings may save judicial resources because, if Baker Donelson is disqualified, replacement counsel may take a different approach, mooting Piano Mill's current Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.

### E. Conclusion.

Baker Donelson's concurrent conflict between Piano Mill and The Foundation meets the burden for disqualification. Baker Donelson has systematically represented Gibson in various issues substantially related to the above captioned case. In these numerous representations, Gibson has provided Baker Donelson with confidential information related to its representation. Baker Donelson's conflict with Gibson should be imputed onto The Foundation through the entity

theory.  The Foundation has not given Baker Donelson its informed consent to represent the directly adverse Piano Mill.

Regardless of whether The Foundation is found to be a current or former client of Baker Donelson, the evidence supports that Baker Donelson should be disqualified from representing Piano Mill in this action.

                                                  Respectfully submitted,

                                                  /s/ Tim Harvey
                                                  Tim Harvey (BPR No. 21509)
                                                  Riley Warnock & Jacobson, PLC
                                                  1906 West End Avenue
                                                  Nashville, TN 37203
                                                  (615) 320-3700
                                                  tharvey@rwjplc.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Motion to Disqualify was served via ECF system this 6th day of February, 2020 upon:

Johnathan Cole
Sye T. Hickey
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
Baker Donelson Center, Suite 800
211 Commerce St.
Nashville, TN 37201
jcole@bakerdonelson.com
shickey@bakerdonelson.com

                                                  Tim Harvey