UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

Docket No. 1:20CV10682-IT

```
*************************************
GIBSON FOUNDATION, INC.,              *
A Delaware Corporation,               *
Plaintiff,                            *
                                      *
v.                                    *
                                      *
ROB NORRIS D/B/A THE PIANO            *
MILL, a Citizen of Massachusetts,     *
THE PIANO MILL GROUP, LLC,            *
Defendant/Plaintiff in Counterclaim   *
                                      *
*************************************
```

## DEFENDANTS, ROB NORRIS D/B/A THE PIANO MILL, AND THE PIANO MILL GROUP, LLC'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF (INCORPORATED HEREIN)

### I.   INTRODUCTION

The Defendants, Rob Norris d/b/a The Piano Mill and The Piano Mill Group, LLC (hereinafter "Norris" and "LLC" or collectively "Defendants"), request that this Honorable Court enter Summary Judgment in their favor and against the Plaintiff, Gibson Foundation, Inc. (hereinafter "Gibson" or "the Foundation"), on Counts I (Breach of Contract), II (Breach of Bailment), and III (Conversion) of Plaintiff's First Amended Complaint. The undisputed evidence shows that Plaintiff cannot satisfy the essential elements of these claims. With respect to Count III, alleging Conversion, Plaintiff also failed to file this action within the applicable

1

three-year statute of limitations, and Defendants, therefore, are entitled to Summary Judgment on that basis as well.

## II. FACTS

Mr. Robert Norris, owner and operator of the Piano Mill Group, LLC, operates a piano shop in the Town of Rockland, Massachusetts. The foregoing business repairs, rents and sells a variety of pianos. In 2011 Robert Norris was seeking a used concert piano to add to his collection of pianos for loan or lease.

Mr. Norris conferred with Mr. Tom Dorn, a Baldwin representative in 2011 regarding his search for a used piano. Gibson Brands had previously acquired Baldwin Piano Company through a bankruptcy transaction. Tom Dorn referred Mr. Norris to Jim Felber who informed Mr. Norris that there was a used Baldwin SD-10 piano that was available and located in the Hammerstein Ballroom in New York.

During June of 2011, the subject piano was in fact located at the Hammerstein Ballroom in New York while that ballroom was in the midst of renovation and reconstruction. Mr. Norris was advised, during June 2011, by Jim Felber that if Mr. Norris wanted the subject piano he had to remove it from the Hammerstein Ballroom. Jim Felber advised Mr. Norris that the subject piano was interfering with reconstruction work at the Ballroom and if it was not removed it was scheduled for disposal. Jim Felber further stated to Mr. Norris that the subject piano was a "thorn in his side", that Gibson "is a guitar company, not a piano company" and that Mr. Norris "would be doing [Felber] a favor" if he removed the subject piano from the Hammerstein Ballroom. Jim Felber further communicated to Mr. Norris that "It's all yours if you can remove it within a couple of weeks without any conditions."

In reliance upon the foregoing, Mr. Norris, at his own expense, removed the subject piano from the Hammerstein Ballroom on July 11, 2011 and transported the piano to his piano shop in Rockland, Massachusetts. The subject piano, a Baldwin SD-10 concert grand piano, bearing serial number 255848, was purportedly used by Liberace. It was not until 2015 that Gibson Brands began demanding the return of the subject piano.

On June 8, 2015, counsel for Gibson Brands forwarded a communication to Mr. Norris demanding the return of the subject piano. In response, on June 28, 2015 counsel on behalf of Mr. Norris responded to Gibson Brands noting that Gibson did not have any ownership rights to the subject piano. The subject piano was thereafter not returned to Gibson Brands.

The Plaintiff in the present case, Gibson Foundation, Inc., claims title to the subject piano through Baldwin and Gibson Brands, Inc. It was not until November 11, 2019 that Gibson Brands, Inc. executed a purported Bill of Sale purportedly transferring title of the subject piano to the Plaintiff Gibson Foundation, Inc. The foregoing Bill of Sale contains no piano serial number and merely states: "… Seller hereby irrevocably sells, assigns, transfers, conveys, grants, to Buyer, all its right, title and interest in and to the Baldwin Liberace SD-10." No further identifying information is contained therein.

Thirty days following the execution of the foregoing Bill of Sale Gibson Foundation filed its initial lawsuit against the Defendants Mr. Norris and his company in the United States District Court for the Middle District of Tennessee. Following arguments and adjudication of the Defendant's Motions in Opposition to the foregoing lawsuit, a Judge of the Tennessee Federal Court ordered the within action to the Federal District Court for the District of Massachusetts. Between July 11, 2011 and the present the subject Baldwin SD-10 concert piano, bearing serial

number 255848, has been in the exclusive possession and control of the Defendants, Rob Norris and the Piano Mill Group, LLC.

### III. STANDARD FOR SUMMARY JUDGMENT

Summary Judgment is appropriate if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[G]enuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (citation omitted).

The moving party bears the burden of establishing that there are no genuine disputes of material fact. *Wade v. Touchdown Realty Group, LLC*, 386 F.Supp.3d 56, 62 (D. Mass. 2019). When considering a motion for summary judgment, "the Court must view the entire record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Id.*, citing *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 779-80 (1st Cir. 2011). "Once the movant has averred that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material." *Levine-Diaz v. Humana Health Care*, 990 F. Supp. 2d 133, 139 (D.P.R. 2014). "[T]o withstand a properly supported motion for summary judgment, the opposing party must present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002). "'The test is whether, as to each essential element, there is 'sufficient evidence favoring the nonmoving party

4

for a jury to return a verdict for that party.'" *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 153 (1st Cir. 2009), quoting *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997); *Berkshire Bank v. Twin Tiers Aviation, Inc.*, 527 F. Supp. 3d 101, 102–03 (D. Mass. 2021).

Given the undisputed material facts in this case, Defendants are entitled to Summary Judgment on each of Plaintiff's claims, alleging Breach of Contract (Count I), Breach of Bailment (Count II), and Conversion (Count III).

## IV. ARGUMENT

### A. Plaintiff Cannot Prove Its Claim For Conversion, Because it Failed to File this Action Within the Applicable Statute of Limitations and Cannot Establish Ownership of the Subject Piano

As a threshold matter, the undisputed evidence makes clear that Gibson failed to file an action for Conversion within three years after its purported claim accrued. Because this issue is dispositive of Plaintiff's conversion claim, Count III must be dismissed.

"The tort of conversion requires an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession." *Kelley v. LaForce*, 288 F.3d 1, 11-12 (1st Cir. 2002), *citing Third Nat. Bank of Hampden Cty. v. Cont'l Ins. Co.*, 388 Mass. 240, 244, 446 N.E.2d 380, 383 (1983); Restatement (Second) of Torts § 222A (Am. Law Inst. 1965). "An action for conversion 'cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it, or destroyed the property.'" *Grande v. PFL Life Ins. Co.*, 2000 WL 1476676, at *4 (Mass. App. Div. Sept. 27, 2000), quoting *Spooner v. Manchester*, 133 Mass. 270, 273 (1882).

5

Conversion occurs when a defendant "intentionally or wrongfully exercises acts of ownership, control or dominion over personal property to which he has no right of possession at the time." *Bleicken v. Stark*, 61 Mass. App. Ct. 619, 622 n. 2, 813 N.E.2d 572, 576 (2004), *quoting from Abington Natl. Bank v. Ashwood Homes, Inc.*, 19 Mass.App.Ct. 503, 507, 475 N.E.2d 1230 (1985). "A demand is a necessary preliminary to an action for conversion where the defendant's possession is not wrongful in its inception and demand and refusal are required to put him in the position of a wrongdoer." *Abington Natl. Bank,* 19 Mass. App.Ct. at 506–507, 475 N.E.2d 1230, *citing Atlantic Fin. Corp. v. Galvam*, 311 Mass. 49, 50-51, 39 N.E.2d 951 (1942). See also Restatement (Second) of Torts § 237 (1965). Where a defendant's possession is not wrongful in its inception, demand and refusal are thus prerequisites to an action for conversion. *Atlantic Fin. Corp. v. Galvam*, 311 Mass. at 50-51, 39 N.E.2d 951; *Abington Nat'l Bank v. Ashwood Homes, Inc.*, 19 Mass.App.Ct. at 507, 475 N.E.2d 1230; W. Page Keeton, Prosser and Keeton on the Law of Torts § 15, at 99 (5th ed. 1984). *In re Halmar Distributors, Inc.*, 968 F.2d 121, 129 (1st Cir. 1992), *opinion corrected* (July 16, 1992).

The statute of limitations for a conversion claim is three years from the date the cause of action accrues. G.L. Ch. 260, § 2A; *Patsos v. First Albany Corp.*, 433 Mass. 323, 327 n.6, 741 N.E.2d 841, 846 (2001); *Nortek, Inc. v. Liberty Mut. Ins. Co.,* 65 Mass. App. Ct. 764, 770, 843 N.E.2d 706, 712 (2006); *In re Blast Fitness Grp., LLC*, 602 B.R. 208, 229 (Bankr. D. Mass. 2019). A cause of action for conversion accrues when the plaintiff suffers an injury or loss. *Nortek*, 65 Mass. App. Ct. at 770, 843 N.E.2d at 712. "Massachusetts courts apply the discovery rule to actions for conversion, where the statute of limitations does not begin tolling until the plaintiff learns, or reasonably should have learned, that she has been harmed. *See White v. Peabody Const. Co.*, 386 Mass. 121, 130, 434 N.E.2d 1015, 1021 (1982). [Under this standard,]

the statute of limitations begins to run 'when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury.' *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 207, 557 N.E.2d 739, 741 (1990)." *Turner, Jr. v. Macone*, 2017 WL 8292505, at *2 (Mass.Super. July 14, 2017). "The party seeking the benefit of the discovery rule has the burden of showing (1) that she lacked actual knowledge of the basis for her claim and (2) that her lack of knowledge was objectively reasonable. *Id.*, *citing to Koe v. Mercer*, 450 Mass. 97, 101, 103, 876 N.E.2d 831, 836 (2007). "The plaintiff need not know the full extent of the injury before the statute starts to run." *Olsen v. Bell Tel. Laboratories, Inc.*, 388 Mass. 171, 175, 445 N.E.2d 609 (1983).

Summary judgment may be granted "on a limitations defense if there is no genuine dispute about the material facts, and the record evidence would not permit a reasonable jury to return a verdict for the nonmoving party." *Museum of Fine Arts, Bos. v. Seger-Thomschitz*, 623 F.3d 1, 9 (1st Cir. 2010), citing to *Genereux v. Am. Beryllia Corp.*, 577 F.3d 350, 361 (1st Cir.2009); *Doyle v. Shubs*, 905 F.2d 1, 1 (1st Cir.1990) (per curiam). Both requirements are satisfied here.

Even under the most generous possible reading of the evidence, Plaintiff cannot show that this action was filed within three years of the accrual of its claim alleging conversion. It is undisputed that Plaintiff knew of the facts underlying its conversion claim against Defendants *and* the harm it allegedly had sustained by June 8, 2015—the date on which Bruce Mitchell, Gibson's EVP and General Counsel, wrote to Norris and demanded that he return the Subject Piano ("I have [had] an opportunity to review the many communications ... and it is very clear that there can be no legitimate dispute that title to this Piano was and remains with Gibson ... I have seen no communications from anyone that would lead a reasonable person to a different

7

conclusion. I must respectfully demand that you provide[] and facilitate the return of this Piano to Gibson. Failure to do so will result in Gibson taking immediate level action, availing itself of all remedies."). (S.O.F. Ex. B, Ex. E, and Ex. F). If there were any question as to Norris' position, it was clarified beyond doubt on June 26, 2017, when counsel for Norris responded: "Dear Mr. Mitchell ....We are advised that The Piano Mill rescued the Liberace Piano from destruction based on promises that it would own the rescued piano [and that] you have failed to produce any evidence that you have ... any ownership interest in the piano, or ever had such an interest. Accordingly, we do not agree that you have a right to the piano."). (S.O.F. Ex. G). Gibson's cause of action accrued at the same time (at the latest), but Plaintiff did not file the Tennessee Action against Norris until December 11, 2019—nearly four and a half years later. (S.O.F. Ex. I). Therefore, plaintiffs' conversion claim is time barred, and Defendants are entitled to Summary Judgment on that basis.

Plaintiff's conversion claim also fails on the merits. "In Massachusetts, the tort of conversion 'requires the exercise of dominion or control over personal property of another.'" *In re Dougherty,* 509 B.R. 757, 769 (Bankr. D. Mass. 2014), *aff'd sub nom. deBenedictis v. Dougherty,* CV 14-12139-GAO, 2015 WL 4480724 (D. Mass. July 22, 2015), *citing Third Nat'l Bank v. Continental Ins. Co.,* 388 Mass. at 244, 446 N.E.2d at 383; *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops,* 4 F.3d 90, 95 (1st Cir. 1993) (discussing the elements of conversion under Massachusetts law); *Gen. Elec. Co. Bus. Lighting Group v. Halmar Distributors, Inc.,* 232 B.R. 18, 22 (Bankr. D. Mass. 1999) ("Conversion is the wrongful exercise of dominion or control over the personal property, including money, of another."). A plaintiff asserting a conversion claim under Massachusetts law must show that: (1) the defendant intentionally and wrongfully exercised control or dominion over personal property; (2) the

plaintiff had an ownership interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused. *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops,* 4 F.3d at 95 (footnote and citations omitted). In Massachusetts,

> An action for conversion "cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it, or destroyed the property."

*In re Zak,* 573 B.R. 13, 41–42 (Bankr. D. Mass. 2017), citing *Grande v. PFL Life Ins. Co.,* 2000 WL 1476676, at *4. Plaintiff has the burden of proving the essential elements of a claim for Conversion. *Evergreen Marine Corp v. Six Consignments of Frozen Scallops,* 4 F.3d at 95.

In the case at bar, plaintiff has not met its burden of proving that it owned or had a legal right to immediate possession of the subject Liberace Piano at the time Norris took possession of it. At first blush, such a showing may seem self evident—but as the record makes clear—in this case Gibson has failed to make it. Indeed, despite being asked on numerous occasions to provide evidence of its ownership interest in the piano, Gibson has provided nothing more than unsupported, conclusory statements in support of its claim that it's alleged predecessor in interest, Gibson Brands Inc., owned the Subject Piano during the timeframe up to and including July 2011. (S.O.F. Ex. K)(See Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories, dated January 8, 2021, Ex. K (INTERROGATORY NO. 2: Please describe in detail the chain of title or ownership in the subject piano from the time of its manufacture up to and including July 2011. RESPONSE TO INTERROGATORY NO. 2: "…. The subject piano was owned by Baldwin Piano and Gibson Brands and was transferred to the [Plaintiff] Gibson Foundation. Discovery is ongoing, Gibson reserves the right to supplement the response to

9

Interrogatory No. 2 as new information becomes available."). Such conclusory statements are wholly insufficient to meet Gibson's burden. *See Sumner v. Darrin*, No. CV 03-40080-FDS, 2006 WL 8458645, at *14 (D. Mass. June 29, 2006)(stating that "conclusory statements are not 'evidence' sufficient to stave off summary judgment"); *Madsen v. Erwin*, 395 Mass. 715, 721, 481 N.E.2d 1160, 1164 (1985), *citing Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir.1972) ("Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment.")(alteration in original).

Nor does the fact that Gibson Foundation subsequently produced a purported "Bill of Sale" for a "Baldwin Liberace SD-10 Piano" from Gibson Brands, Inc. to Gibson Foundation, dated November 11, 2019 (exactly one month before the Foundation filed its original Complaint in Tennessee), assist Plaintiff in meeting its burden. (S.O.F. Ex. H). First, the "Bill of Sale" does not identify the piano by serial number, and it could, therefore, refer to any number of Baldwin SD-10 pianos. But more important, because Plaintiff has not produced any evidence that Gibson Brands, Inc. ever owned the specific, Subject Piano, the purported sale to Plaintiff does nothing to advance the Foundation's claim of ownership. *See generally Fin. Freedom Acq., LLC v. Laroche*, HDCV201100403, 2015 WL 530141, at *9 (Mass. Super. Jan. 5, 2015), *aff'd*, 57 N.E.3d 1065 (Mass. App. 2016), *citing Bongaards v. Millen*, 440 Mass. 10, 15, 793 N.E.2d 335, 339 (2003) ("one cannot convey property that she does not own").

Because Plaintiff cannot establish that it had an ownership interest in the Subject Piano at the time Defendants allegedly converted it, its claim for conversion must fail. On this independent ground as well, Defendants are entitled to Summary Judgment on Count III.

>   B.  Plaintiff Cannot Establish the Existence of a "Warehousing Agreement" Between the Parties Regarding the Subject Piano and if Such an Agreement Existed, the Essential Terms are Not Sufficiently Definite or Certain to Ascertain the Parties' Intent or the Nature or Extent of Their Obligations Thereunder

"It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." *Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878, 724 N.E.2d 699, 703 (2000), *citing McCarthy v. Tobin*, 429 Mass. 84, 87, 706 N.E.2d 629 (1999); *Rosenfield v. United States Trust Co.*, 290 Mass. 210, 216, 195 N.E. 323 (1935) (failure to agree on material terms may be evidence that parties do not intend to be presently bound); *David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc.*, 8 Mass.App.Ct. 237, 241, 392 N.E.2d 1066 (1979), and cases cited (party to contract may be found to have entered binding agreement if party intended to be presently bound). Under Massachusetts law, Plaintiff bears the burden of proving the existence of such an agreement. *Moore v. La-Z-Boy, Inc.*, 639 F. Supp. 2d 136, 140 (D. Mass. 2009)("Plaintiffs have the burden of proving the existence of a contract.").

"All the essential terms of a contract must be [sufficiently] definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined." *Moore*, 639 F. Supp. 2d at 140 (alteration in original), *quoting Cygan v. Megathlin*, 326 Mass. 732, 734, 96 N.E.2d 702, 703 (1951). Although an exchange of e-mail communications can, in certain circumstances, constitute a contract under Massachusetts law, *see Fecteau Benefits Grp., Inc. v. Knox*, 72 Mass.App.Ct. 204, 890 N.E.2d 138, 145 (2008), in "order to prove the existence of a contract that Defendants could have breached, Plaintiffs [still] bear the burden of proving that there was an 'agreement between the parties on the material terms of that contract, and [that] the parties ... ha[d] a present intention to be bound by that agreement.'" *Astellas Inst. for Regenerative Med. v. ImStem Biotechnology, Inc.*, 458 F.

11

Supp. 3d 95, 108 (D. Mass. 2020), *citing Situation Mgmt. Sys. v. Malouf, Inc.*, 430 Mass. 875, 724 N.E.2d at 703; *Moore v. La-Z-Boy, Inc.*, 639 F. Supp. 2d at 140. Put another way, "[t]o succeed on a claim for breach of contract, a plaintiff 'has the burden of proving the failure of the defaulting party to conform to one or more of the contract's material terms.' …Implicit in that requirement is that a plaintiff must 'offer evidence sufficient to show the existence *and* terms of a contract, and breach of a promise contained therein.'" *Scarpaci v. Lowe's Home Ctr., LLC*, 212 F. Supp. 3d 246, 252 (D. Mass. 2016) (internal citations omitted). Here, Plaintiff can do neither.

Even if the few emails upon which Plaintiff relies in support of its claims may be considered by the Court in determining whether an agreement exists (which is unclear since Plaintiff has thus far failed to authenticate the same), and in ascertaining the essential terms of any agreement, the intention of the parties, and the nature and extent of their obligations, if any, these emails, without more, are insufficient as a matter of law to meet Plaintiff's burden. Defendant maintains unequivocally that there was no "Warehousing Agreement" or "Bailment Agreement" and that Gibson unequivocally stated that if he removed and rescued the Piano, which was slated for disposal, from the Hammerstein Ballroom he would own it outright. (S.O.F. Ex. A and S.O.F. Ex. C ). While the emails upon which Gibson relies indicate that the parties were discussing the fact that Norris was interested in acquiring a piano from Gibson and could not afford to spend $30,000, they do not establish that an agreement was reached, and certainly do not include sufficient information from which to ascertain the material terms of any agreement or the parties' (and specifically, Norris') intent to be bound by the same.

Even if admissible, the emails, without more, are simple insufficient to prove—as Gibson must—the essential elements of its Breach of Contract claim. Although Gibson initially indicated that former Baldwin employees Tom Dorn and Jim Felber "may be aware of" the

"relationship with Norris" or the "circumstances surrounding the piano" and could be reached through its counsel (S.O.F. Ex. E), it is now abundantly clear that Gibson cannot produce these individuals, who apparently are nowhere to be found. (S.O.F. Ex. J)("Gibson and their counsel are unaware of the whereabouts of [Dorn and Felber] at this time."). In these circumstances, Plaintiff cannot possibly sustain its burden of proving that a "Warehousing Agreement" (or a Bailment Agreement, for that matter, *see infra*) existed between Gibson and Defendants, pursuant to which both parties intended to be bound, or, if such an agreement did in fact exist, the material terms of the agreement or the nature and extent of the parties' obligations thereunder. Accordingly, Defendant is entitled to Summary Judgment on Count I of Plaintiff's Amended Complaint, alleging Breach of Contract.

    C.    <u>Plaintiff Cannot Establish the Existence of a Bailment Agreement Regarding the Piano Because It Cannot Show that it Owned the Piano, and Cannot Prove the Essential Terms of Any Agreement</u>

A bailment "is the delivery of goods *by their owner to another* for a specific purpose, and the acceptance of those goods by the other, with the express or implied promise that the goods will be returned after the purpose of the delivery has been fulfilled." *Goudy & Stevens, Inc. v. Cable Marine, Inc.*, 924 F.2d 16, 18 (1st Cir.1991), *citing* 9 *Williston on Contracts,* § 1030, pp. 875–76). *In re Complaint of Martin*, 596 F. Supp. 2d 142, 161 (D. Mass. 2009), *aff'd sub nom. Martin v. Metro. Yacht Club, Inc.*, 388 F. App'x 6 (1st Cir. 2010)(emphasis added). A claim for breach of bailment is, in essence, a breach of contract claim. *See Vaks v. Ryan*, 2012 Mass. App. Div. 17, at *4 (Dist. Ct. 2012)(no error for breach of bailment count to be tried as a breach of contract claim).

13

In addition to being the owner of the property allegedly subject to a bailment contract, the bailor (owner) must prove:

(1) the existence of a bailment contract;

(2) the delivery of the bailed property to the bailee; and

(3) the failure of the bailee to deliver the bailed property undamaged pursuant to the terms of the bailment.

46 Am. Jur. Proof of Facts 3d 361 (December 2021 Update)(citing cases). "[O]nce the bailor proves delivery of the property to the bailee in good condition and the failure to redeliver upon timely demand, the burden of proof [shifts to] the bailee to prove by a fair preponderance of the evidence that he has exercised due care to prevent the property's loss or destruction." *Knowles v. Gilchrist Co.*, 362 Mass. 642, 652, 289 N.E.2d 879, 885 (1972). But the burden of proving the existence of a bailment contract unequivocally rests with the Plaintiff. *See Id. See also Orient Overseas Container Line v. John T. Clark & Sons of Bos., Inc.*, 229 F. Supp. 2d 4, 15 (D. Mass. 2002), *citing to Knowles, supra.*

For all the reasons set forth in the prior sections, Gibson cannot show 1) that it owned the Subject Piano when the alleged bailment agreement was created (Section IV.A.); 2) that a bailment agreement existed between the parties; or 3) the material terms, including the rights and obligations of the parties, of such as agreement (Section IV.B). Thus, Defendants are entitled to Summary Judgment on Count III (Bailment) of the Amended Complaint.

## V. CONCLUSION

For all of the aforementioned reasons, Defendants, Rob Norris d/b/a/ The Piano Mill and The Piano Mill Group, LLC, respectfully request that this Honorable Court enter Summary

Judgment in their favor on Count I (Breach of Contract), Count II (Breach of Bailment), and Count III (Conversion) of Plaintiff's First Amended Complaint.

                              Respectfully submitted,
                              Counsel for Defendants,
                              Rob Norris d/b/a The Piano
                              Mill and The Piano Mill Group, LLC,

                              /s/ Daniel J. Gibson
                              Daniel J. Gibson, Esq.
                              BBO#: 550661
                              SKB, Attorneys
                              1140 Washington Street
                              Hanover, MA 02339
                              Tel.: (781) 829-9993
Dated: January 28, 2022            djg@skb-law.com