# EXHIBIT A

UNITED STATES DISTRICT
COURT FOR THE
DISTRICT OF MASSACHUSETTS

DOCKET NO.: 1:20CV10682-IT

GIBSON FOUNDTION, INC.          )
A Delaware Corporation,          )
     Plaintiff,              )
                    )
v.                               )
                    )
ROB NORRIS d/b/a THE PIANO       )
MILL, a Citizen of Massachusetts, )
THE PIANO MILL GROUP, LLC        )
     Defendants.             )

## DEFENDANTS' ANSWER TO THE PLAINTIFF'S FIRST AMENDED COMPLAINT AND VERIFIED COUNTERCLAIM

### FIRST AMENDED COMPLAINT

The Defendants, Rob Norris ("Norris") d/b/a The Piano Mill and The Piano Mill Group, LLC ("the LLC") hereby answer and counterclaim, the Plaintiff's ("the Foundation") First Amended Complaint and respond as follows:

### NATURE OF ACTION

1.    The defendant ("Norris") DENIES all allegations set forth in paragraph 1. The defendant ("the LLC") DENIES all allegations set forth in paragraph 1.

### THE PARTIES

2.    The defendants ("Norris") and ("the LLC") are without sufficient information to either ADMIT or DENY the allegations set forth in paragraph 2.

3.    The defendants ("Norris") and ("the LLC") are without sufficient information to either ADMIT or DENY the allegations set forth in paragraph 3.

1

4.      The defendant ("Norris") ADMITS only that portion of paragraph 4 which sets forth that it

is a citizen of Massachusetts located in Rockland, Massachusetts, however DENIES the remaining

allegations set forth in paragraph 4.

5.      The defendant ("the LLC") ADMITS the allegations set forth in paragraph 5.

6.      The defendants ("Norris") and ("the LLC") ADMIT only that portion of paragraph 6

which sets forth that the defendants are engaged in the sale of pianos at its place of business in

Rockland, Massachusetts and that its web site is www.pianomill.com, however, the defendants

DENY the remaining allegations set forth in paragraph 6.

## JURISDICTION AND VENUE

7.      The defendants ("Norris") and ("the LLC") ADMIT the allegations set forth in

paragraph 7.

8.      The defendants ("Norris") and ("the LLC") DENY the allegations set forth in paragraph

8 which accuse the defendants of wrongful acts alleging breach of contract, breach of bailment

and conversion within any judicial district.  Further answering, the defendants ("Norris') and

("the LLC") allege that Court not only has proper jurisdiction over both defendants but also has

proper jurisdiction over the plaintiff ("the Foundation") because it has purposefully availed itself

of the opportunity to conduct commercial activities in this jurisdiction. Further, the plaintiff ("the

Foundation") maintains continuous and systematic contacts with this jurisdiction such that the

exercise of jurisdiction over it would not offend traditional notions of fair play and substantial

justice.  Additionally, personal jurisdiction is appropriate over the plaintiff ("the Foundation")

pursuant to M.G. L. c. 223A, §3 predicated upon the notion that the exercise of jurisdiction is not

inconsistent with the Massachusetts Constitution or of the United States Constitution.  Venue is

also appropriate in this matter as admitted by the plaintiff ("the Foundation") when it first

threatened litigation by forwarding to the defendant ("Norris") its initial planned Complaint

containing in its caption "Federal District Court for the District of Massachusetts."

## WAREHOUSING AGREEMENT REGARDING BALDWIN PIANO

9.      The defendants ("Norris") and ("the LLC") are without sufficient information to either

ADMIT or DENY the allegations set forth in paragraph 9.

10.     The defendants ("Norris") and ("the LLC") ADMIT only that portion of paragraph 10

which sets forth that the subject piano was manufactured by the Baldwin Piano Company,

however, they are without sufficient information to either ADMIT or DENY the remaining

allegations set forth in paragraph 10.

11.     The defendants ("Norris") and ("the LLC") are without sufficient information to either

ADMIT or DENY the allegations set forth in paragraph 11.

12.     The defendant ("Norris") ADMITS only those portions of paragraph 12 which set forth

that in 2011 the defendant ("Norris") was seeking a Baldwin Concert Grand Piano for rental

purposes, however, DENIES the remaining allegations set forth in paragraph 12.

13.     The defendant ("Norris") DENIES the allegations set forth in paragraph 13.

14.     The defendant ("Norris") DENIES the allegations set forth in paragraph 14.

15.     The defendant ("Norris") DENIES the allegations set forth in paragraph 15.

16.     The defendant ("Norris") DENIES the allegations set forth in paragraph 16.

17.     The defendant ("Norris") states that in 2012 the name of his business changed from

Piano Mill, LLC to Piano Mill Group, LLC.

18.     The defendants ("Norris") and ("the LLC") ADMIT only that portion of paragraph 18 which alleges that the defendants have had possession of the subject piano since 2011, however, the defendants ("Norris") and ("the LLC") DENY the remaining allegations set forth in paragraph 18.

19.     The defendants ("Norris") and ("the LLC") ADMIT only that portion of paragraph 19 which sets forth that the plaintiff's predecessor-in-interest communicated by email to the defendant ("Norris") during the Summer of 2015 requesting the return of the subject piano, however, DENY the remaining allegations set forth in  paragraph 19.

20.     The defendants ("Norris") and ("the LLC") ADMIT only that portion of paragraph 20 which sets forth that the plaintiff's ("the Foundation") predecessor in interest mailed a letter to the defendant ("Norris') on March 22, 2019, however, DENY the remaining allegations set forth in paragraph 20.

21.     The defendants ("Norris") and ("the LLC") ADMIT only that portion of paragraph 21 which sets forth that a letter dated November 19, 2019 was mailed to the defendant's Massachusetts counsel, however, the defendants are without sufficient information to either ADMIT or DENY the remaining allegations set forth in paragraph 21.

22.     The defendants ("Norris") and ("the LLC") ADMIT the allegations set forth in paragraph 22.

23.     The defendants ("Norris") and ("the LLC") DENY the allegations set forth in paragraph 23.

## COUNT I
### Breach of Contract

24.     The defendants ("Norris") and ("the LLC") repeat and restate each and every answer contained in the preceding paragraphs 1 through 23 inclusive, as if fully restated herein.

4

25.     The defendants ("Norris") and ("the LLC") DENY the allegations set forth in paragraph 25.

26.     The defendant ("Norris") ADMITS only that portion of paragraph 26 which alleges that the defendant has maintained possession of the subject piano since 2011, however, DENIES the remaining allegations set forth in paragraph 26.

27.     The defendant ("Norris") ADMITS only that portion of paragraph 27 which alleges that the plaintiff's predecessor-in-interest sent communications to the defendant, beginning in 2015, however, DENIES the remaining allegations set forth in paragraph 27 specifically DENYING that any alleged "warehousing agreement" ever existed concerning the subject piano.

28.     The defendant ("Norris") DENIES the allegations set forth in paragraph 28.

29.     The defendant ("Norris") DENIES the allegations set forth in paragraph 29 and only ADMITS that ("the Foundation") is only making its claim through its predecessor in interest.

## COUNT II
### Breach of Bailment

30.     The defendant ("Norris") repeats and restates each and every answer contained in the preceding paragraphs 1 through 29 inclusive, as if fully restated herein.

31.     The defendant ("Norris") DENIES the allegations set forth in paragraph 31.

32.     The allegations set forth in paragraph 32 set forth a legal principle to which no response is required.

33.     The defendant ("Norris") ADMITS only that portion of paragraph 33 which alleges that the defendant refused to return the subject piano, however, DENIES the remaining allegations set forth in paragraph 33, specifically DENYING that any alleged "bailment agreement" ever existed concerning the subject piano.

34.     The defendant ("Norris") DENIES the allegations set forth in paragraph 34.

### COUNT III
### Conversion

35.     The defendants ("Norris") and ("the LLC") repeat and restate each and every answer contained in the preceding paragraphs 1 through 34 inclusive, as if fully restated herein.

36.     The defendants ("Norris") and ("the LLC") DENY the allegations set forth in paragraph 36.

37.     The defendants ("Norris") and ("the LLC") DENY the allegations set forth in paragraph 37.

### AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The plaintiff's Complaint should be dismissed due to the insufficiency of process.

### SECOND DEFENSE

The plaintiff's Complaint should be dismissed due to the insufficiency of service of process.

### THIRD DEFENSE

The plaintiff's Complaint should be dismissed due to its failure to state a claim upon which relief can be granted.

6

## FOURTH DEFENSE

The plaintiff's Complaint should be dismissed due to its misnomer of a party defendant.

## FIFTH DEFENSE

The plaintiff's Complaint should be dismissed due to the late commencement of the within action which is beyond the time period set forth in the applicable statute of limitations.

## SIXTH DEFENSE

The plaintiff's Complaint should be dismissed due to the late commencement of the within action which is beyond reasonable time limits as contemplated by the doctrine of laches.

## PRAYER FOR RELIEF

WHERFORE, the defendants pray for judgment as follows:

1.     That this Honorable Court order that judgment be entered in favor of the defendants on all Counts and causes of action set forth in the plaintiff's Complaint.

2.     That this Honorable Court order that judgment be entered awarding the defendants the full cost of defending this action and related disbursements along with reasonable counsel fees incurred and as otherwise appropriate pursuant to the applicable statues and laws of the Commonwealth of Massachusetts.

3.     That this Honorable Court grant to the defendants such further relief at law or in equity as this Court may deem just and appropriate both under common as well as statutory law.

## DEMAND FOR JURY TRIAL

The defendants respectfully demand trial by jury on all issues.

## VERIFIED COUNTERCLAIM

The defendants ("Norris") and ("the LLC") plaintiffs in counterclaim, hereby file this Counterclaim against the defendant in counterclaim, ("the Foundation") and allege and set forth the following:

### NATURE OF ACTION

1.      This is an action against the defendant in counterclaim ("the Foundation") requesting a DECLARATORY JUDGMENT or in the alternative an EQUITABLE ORDER establishing that the plaintiffs in counterclaim ("Norris") and ("the LLC") are in fact the true and lawful owner of the asset in dispute, a Baldwin SD-10 Piano bearing the serial number 255848.

2.      The plaintiffs in counterclaim ("Norris") and ("the LLC") also assert a claim against ("the Foundation") predicated upon ABUSE OF PROCESS arising out of the initial Complaint in this matter which was filed by ("the Foundation") in the Federal District Court for the Middle District of Tennessee pursuant to Docket No.: 3:19-cv-01109.

3.      The plaintiffs in counterclaim ("Norris") and ("the LLC") have a principal place of business located at 295 Centre Avenue, Rockland, MA 02370.

4.      ("Norris") is, and has been since approximately 2004, as Piano Mill, LLC, in the business of buying, selling, moving, storing, leasing, restoring and refurbishing pianos and ("the LLC") has been in existence since 2012.

5.      Based upon information and belief ("the Foundation") is a Delaware corporation, which maintains a principal place of business at 309 Plus Park Boulevard, Nashville, Tennessee 37217.

8

6.      Based upon information and belief, ("the Foundation") is an organization that conducts its business in the State of Tennessee but also, as evidenced by and through its website Gibson.com, conducts business in Massachusetts with entities that have Massachusetts connections such as the Ronald McDonald House (with several locations in Boston, Massachusetts), YMCA (with numerous locations in Massachusetts), The United Way (with numerous locations in Massachusetts), and the Guthrie Foundation which is located in Great Barrington, Massachusetts.

7.      Based upon information and belief, ("the Foundation"), through its website, Gibson.com, solicits donations to the Gibson Foundation from Massachusetts donors.

## JURISDICTION AND VENUE

8.      Predicated upon 28 U.S.C. § 1332(a)(l) jurisdiction and venue are appropriate in the District of Massachusetts because ("Norris') and Piano Mill, LLC is a Massachusetts citizen and corporation and ("the LLC") is a Massachusetts entity.

9.      ("the Foundation") is a Delaware Corporation with a principal place of business located Tennessee.

10.     Based on the foregoing, complete diversity of citizenship exists, and it is alleged that the value of the asset (Baldwin SD-10 Piano) is in excess of $75,000.00, exclusive of costs, attorney's fees, and interest.

11.     This action arises out of a dispute concerning ownership of a certain Baldwin SD-10 Piano bearing serial number 255848.

12.     This Honorable Court has both in personam and in rem, jurisdiction because ("Norris") and ("the LLC") are located in Rockland, Massachusetts and maintain ownership and possession of the subject piano in Rockland, Massachusetts, from 2011 to the present.

9

13.     This Honorable Court also has personal jurisdiction over ("the Foundation") as it is a national organization which has continuously and purposefully availed itself of the opportunity to promote and conduct its business within the Commonwealth of Massachusetts and in doing so ("the Foundation") maintains continuous and systematic contact with this forum.

14.     As further evidence that Massachusetts is the proper forum, ("Norris") and ("the LLC") allege that when ("the Foundation") initially threatened litigation over ownership of the subject piano, ("the Foundation") sent ("Norris") a draft Complaint which carried the caption "United States District Court, District of Massachusetts". ("Norris") and ("the LLC") allege that the foregoing is an admission by ("the Foundation") that Massachusetts always was the proper forum to litigate this dispute.

15.     Despite the foregoing, on or about December 11, 2019 ("the Foundation") filed suit against ("Norris") in the Middle District of Tennessee, Docket No. 3:19-CV-01109.

16.     ("Norris") and ("the LLC") allege that the above-referenced lawsuit in the Middle District of Tennessee by ("the Foundation") against ("Norris") was vexatious, intended to intimidate ("Norris"), and an attempt to exert undue pressure by forcing litigation in a non-convenient forum by a national corporation against a Massachusetts sole proprietor ("Norris").

17.     The Tennessee action was the subject of ("Norris'") Motion to Dismiss for lack of in personam jurisdiction and forum non conveniens.

18      ("Norris") was needlessly caused to incur substantial local counsel fees and costs in Nashville, Tennessee to advance and prosecute its motion to dismiss.

19.     As a result, Judge Waverly C. Crenshaw, Jr., of the Federal District Court for the Middle District of Tennessee issued an Order, dated April 6, 2020, allowing ("Norris'") Motion to Dismiss and thereby transferred this case to the District of Massachusetts where it should have been filed in the first instance as initially admitted by ("the Foundation") in its communication to ("Norris") dated April 29, 2019,

## COUNT I

### REQUEST FOR DECLARATORY JUDGMENT

20.     The plaintiffs in Counterclaim ("Norris") and ("the LLC") repeat, reallege and restate paragraphs 1-19 as if fully restated herein.

21.     On or about 2011, ("Norris") was seeking a used concert piano to add to its collection of pianos for loan and lease.

22.     On or about 2011 ("Norris") conferred with Tom Dorn, who upon information and belief was the Business Development and Sales Manager employed by Baldwin Piano Company ("Dorn").

23.     Based upon information and belief in or around 2001, Gibson Brands, Inc. (formerly Gibson Guitar Corporation) purchased Baldwin Piano Company.

24.     On or about 2011, ("Dorn") referred ("Norris") to Jim Felber, who upon information and belief was an Entertainment Relations representative employed by Gibson Brands, Inc. ("Felber").

25.     ("Felber") informed ("Norris") that a Baldwin SD-10 Piano ("subject piano") was available and was located in the Hammerstein Ballroom in New York.

11

26. On or about June, 2011, ("Norris") was informed by ("Felber") that if ("Norris") wanted the subject piano it had to remove the subject piano from the Hammerstein Ballroom located at 311 West 34th Street, New York City, as the Hammerstein Ballroom was under renovation and re-construction.

27. On or about June, 2011, ("Felber") informed ("Norris") that the subject piano was interfering with construction work and if the subject piano was not removed, that the subject piano was scheduled for disposal.

28. ("Felber") stated that the subject piano had "been a thorn in his side," that "[Gibson] is a guitar company, not a piano company," that "["Norris"] would be doing him a favor," and "It's all yours if you can remove it within a couple weeks without any conditions."

29. In reliance on the foregoing, ("Norris"), at its own expense, arranged to remove the subject piano from the Hammerstein Ballroom on July 11, 2011 and transported it back to ("Norris'") shop in Rockland, Massachusetts.

30. The removal of the subject piano from the Hammerstein Ballroom required the use of heavy equipment, as it was located on a balcony on the ninth floor of the Hammerstein Ballroom.

31. Upon taking possession of the subject piano, ("Norris") found it to be in a serious state of disrepair, causing ("Norris") to expend a significant amount of time and funds to restore and refurbish the subject piano.

32. On or about early May, 2013, approximately two years later, ("Norris") was contacted by ("Dorn") who asked ("Norris") to please contact Warner Media, LLC, formerly Time Warner, Inc. ("Time Warner").

12

33.   ("Time Warner") wanted to borrow the subject piano from ("Norris") as part of the promotion of an HBO documentary film on the life of the pianist Liberace, who had previously used the subject piano.

34.   ("Time Warner"), based upon information and belief is the parent company of HBO.

35.   ("Time Warner") requested that ("Norris") display the subject piano from May 19- 27th, 2013 in the lobby of the Time Warner Center located at 10 Columbus Circle, New York City.

36.   ("Time Warner") paid for all costs regarding the transport and display of the subject piano and its return to Rockland, MA by ("Norris") and ("the LLC"), and said sum was approximately $2,500.00.

37.   ("Norris") and ("the LLC") assented to the foregoing request and the subject piano was transported from Rockland, Massachusetts to New York City and was put on display on the condition that an announcement placard be placed on the subject piano announcing "Courtesy of Piano Mill, Rockland, Massachusetts".

38.   Upon Information and belief, no mention of ("the Foundation") was either discussed between ("Norris") and ("the LLC") and ("Time Warner"), nor was (the Foundation") given any acclamation or compensation by ("Time Warner").

39.   Almost two years later, on February 10, 2015, ("Norris") and ("the LLC") sustained a roof collapse due to a heavy snow load at its Rockland, Massachusetts facility causing damage to numerous pianos.

40.   The collapse of the roof received widespread media attention because of the fact that the subject piano, once used by Liberace, was involved in the incident.

13

41. Shortly after this national news coverage regarding the subject piano, almost four years since obtaining the subject piano, on or about June 8, 2015, the predecessor in interest of ("the Foundation"), predecessor in interest sent an email to Piano Mill demanding the return of the subject piano.

42. In its June 8, 2015 email, as well as in subsequent correspondence, ("the Foundation") claimed that it had merely loaned the subject piano to ("Norris") pursuant to a bailment or loaner/storage agreement, for the purpose of promoting the Gibson brand, and that ("Norris'") continued possession of the piano was a conversion.

43. On June 26, 2015, ("Norris") and ("the LLC"), through its attorney, denied each and every of predecessor in interests of ("the Foundation's") assertions; set forth the full circumstances of ("Norris") and ("the LLC's") possession and ownership of the subject piano, which circumstances are completely adverse to ("the Foundation's") and its predecessor in interest assertions to any ongoing ownership interest in the subject piano.

44. Among those facts are:

44.1. The subject piano was slated to be destroyed unless rescued.

44.2. The predecessor in interest of ("the Foundation") was unwilling to expend the time, expense, and effort to rescue the subject piano.

44.3. The predecessor in interest of ("the Foundation") through its authorized agents, employees and/or servants told ("Norris") that it would own the subject piano if it rescued the subject piano from destruction.

44.4. ("Norris") rescued the subject piano from destruction based on representation by ("the Foundation") predecessor in interest that it would own it after rescue.

14

44.5.   The predecessor in interests of ("the Foundation") did not contribute any funds to the rescue of the subject piano.

44.6.   The subject piano was in dilapidated condition when it was rescued by ("Norris").

44.7.   ("Norris") restored the dilapidated piano at its own expense, which was significant.

44.8.   The predecessor in interest of ("the Foundation") did not contribute any funds to the restoration of the dilapidated piano.

44.9.   From the time of rescue to present, ("Norris") and ("the LLC") cared for and insured the loss of the subject piano. ("the Foundation") and its predecessor in interest has never contributed any funds to the care or insurance of the rescued and restored piano.

44.10.   ("the Foundation") nor its predecessor in interest has never contributed any funds for the costs of rescue, restoration, care, or insurance of the subject piano for the time period over eight years since its rescue.

44.11.   ("Norris") and ("the LLC") have displayed the subject piano, openly and notoriously, as being owned by ("Norris") and ("the LLC") for many years, and ("the Foundation") as well as its predecessor in interest had full knowledge of the same.

44.12.   The predecessor in interest of ("the Foundation") never made a claim of ownership or a superior right of possession in all the years that ("Norris") and ("the LLC") displayed and loaned out the subject piano.

44.13.  When the predecessor in interest of ("the Foundation") finally and belatedly claimed an ownership interest in the subject piano, ("Norris") and ("the LLC") repeatedly demanded that the predecessor in interest of ("the Foundation") provide some evidence or proof that supported the claim (such as proof of purchase or proof of devise). Predecessor in interest of ("the Foundation") never, to the present, produced any such proof.

45.     In short, "although the indicia of ownership" by ("Norris") and ("the LLC") (long term public display; loans with attribution; bearing the cost of repair, care, and insurance, etc.) are clear, ("Norris") and ("the LLC") are aware of no countervailing proof that ("the Foundation") nor its predecessor in interest has any ownership interest in the subject piano, or ever had such an interest. Accordingly, ("Norris") and ("the LLC") do not agree that ("the Foundation") has a right whatsoever to the subject piano.

46.     ("Norris") and ("the LLC") have demanded that predecessor in interest of ("the Foundation") preserve all evidence concerning the subject piano. Whether predecessor in interest of ("the Foundation") has done so is currently unknown to the Plaintiffs in counterclaim.

47.     For over three years, the predecessor in interest of ("the Foundation") said nothing more. The predecessor in interest of ("the Foundation") failed to respond to any of ("Norris") and ("the LLC's") detailed factual allegations. The predecessor in interest of ("the Foundation") failed to produce any documents or testimony demonstrating that any of ("Norris") and ("the LLC's") detailed factual allegations were untrue. To date the predecessor of ("the Foundation") failed to produce any documents or testimony demonstrating that it actually had any ownership interest in the

subject piano. Instead, the predecessor in interest of ("the Foundation") ceased all communications with ("Norris") and ("the LLC"), verbally removed ("Norris") as an authorized Baldwin dealer, and the matter appeared to have been dropped.

48.    On or about March 22, 2019, approximately four years after the predecessor in interest of ("the Foundation's") 2015 demand of the return of the subject piano, the predecessor in interest of ("the Foundation") surprisingly once again demanded the return of the piano.

49.    In a communication dated October 9, 2019, Counsel, on behalf of ("the Foundation"), stated "Continuing our correspondence, we are pleased to be able to report that Gibson has decided to donate the Baldwin BD275 HPE 9[1] that has been in your care to the Gibson Foundation for a special charity auction to raise money for the Foundation's programs."

50.    ("the Foundation") and its predecessor in interest has, however, still failed to respond factually to any of ("Norris") and ("the LLC's") detailed factual allegations, to produce any documents or testimony demonstrating that any of ("Norris") and ("the LLC's") detailed factual allegations were untrue, or to demonstrate that ("the Foundation") or its predecessor in interest actually had any ownership interest in the subject piano, either through its predecessor in interest or otherwise, when it made its representations to ("Norris"), inducing ("Norris") to rescue, restore, and insure the piano, as belonging to ("Norris"), which ("Norris") and ("the LLC") have done for so many years.

---

[1] Counsel indicates that Gibson donated the "Baldwin BD275 HPE 9" piano to the Gibson Foundation. However, the piano at issue is a Baldwin SD-10 concert grand piano, and the piano Counsel mentions in her October 9, 2019 letter has no bearing on the underlying allegations.

WHEREFORE, based upon the foregoing, the plaintiffs in counterclaim ("Norris") and ("the LLC") requests this Honorable Court to issue a DECLARATORY JUDGMENT setting forth that ("Norris") and ("the LLC") are the rightful owners of the subject piano and for such further relief as this Court deems just and appropriate plus interest, costs and counsel fees.

## COUNT II

## REQUEST FOR EQUITABLE RELEIF

51.     The plaintiffs in Counterclaim, ("Norris") and ("the LLC"), repeat, restate and reallege paragraphs 1-50 as if fully restated herein.

52.     On July 11, 2011, the plaintiff in counterclaim, ("Norris"), was given and accepted the subject piano from the predecessor in interest of ("the Foundation"), with no conditions, neither implied nor expressed, thereon.

53.     The consideration for the delivery and acceptance of the subject piano was that ("Norris"), at its own expense, removed the subject piano from the Hammerstein Ballroom thus saving ("the Foundation") and its predecessor in interest from the cost of disposal.

54.     Upon the subject piano arriving at ("Norris'") facility in Rockland, Massachusetts, ("Norris"), at its own expense, restored and refurbished the subject piano.

55.     At no time during the removal of the subject piano from the Hammerstein Ballroom was an agent or employee of ("the Foundation") or its predecessor in interest present.

56.     At no time before, during or after the removal of the subject piano from the Hammerstein Ballroom, was ("Norris") or ("the LLC") ever provided with any documents

memorializing any relationship between the parties relating to the subject piano.

57.   At no time before, during or after the removal of the subject piano from the Hammerstein Ballroom, was ("Norris") and ("the LLC") ever provided with instructions of any kind from ("the Foundation") nor its predecessor in interest regarding the subject piano, including the necessity of displaying the piano in ("Norris") and ("the LLC's") showroom for promotional purposes.

58.   For a majority of the time, ("Norris") and ("the LLC") did not display the subject piano in its showroom.

59.   ("Norris") accepted delivery of the subject piano, in good faith, upon good and valuable consideration (moving expenses for a piano which otherwise would have been disposed of), with full expectation of full ownership of the subject piano with no conditions thereon.

60.   ("Norris") has maintained ownership and possession of the subject piano since July 11, 2011 as well as ("the LLC").

61.   It was not until many years after ("Norris") accepted the subject piano from ("the Foundation") through its predecessor in interest, that the defendant in counterclaim ("the Foundation") through its predecessor in interest began demanding the return of the subject piano.

62.   In its April 29, 2019 letter, the predecessor in interest of ("the Foundation") alleged that ("Norris") breached a contractual bailment agreement between the parties which ("Norris") and ("the LLC") deny due to the fact that there is no contractual documentation to support this claim.

63.    No express nor implied contractual nor bailment agreement exists, and even if there was an implied contract between the parties, which ("Norris") and ("the LLC") adamantly deny, the substantial essence of ("the Foundation's") claim sounds in replevin and conversion, both of which are tort claims with a three year statute of limitations which had lapsed at the time ("the Foundation") filed the within action.

64.    Viewing ("the Foundation's") claim chronologically, the statute for replevin and conversion began to run in 2015, when the first demand for the return of the subject piano through email communications from predecessor in interest of ("the Foundation") to ("Norris'"), thus, ("the Foundation's") claim which is factually an action for replevin and conversion, is time barred by the applicable statute of limitations as of 2018.

65.    Furthermore, because ("the Foundation") has waited so long to initiate this action, to the detriment of ("Norris") and ('the LLC"), based upon the totality of the underlying circumstances, the doctrine of laches should preclude ("the Foundation") from any relief, at law or in equity, as the awarding of any such relief to ("the Foundation") would levy undue prejudice on ("Norris") and ("the LLC").

WHEREFORE, predicated upon the foregoing, the plaintiffs-in-counterclaim, ("Norris") and ("the LLC"), requests this Honorable Court to issue an EQUITABLE ORDER setting forth that ("Norris") and ("the LLC") are the rightful owner of the subject Baldwin SD-10 piano with such further relief as this Honorable Court deems just and appropriate together with costs and counsel fees together with interest thereon.

## COUNT III

### ABUSE OF PROCESS

66.     The plaintiffs in counterclaim, ("Norris") and ("the LLC"), repeat,
restate and reallege paragraphs 1 through 65 as if fully restated herein.

67.     After admitting through its own written communications that Massachusetts was
the appropriate jurisdiction to adjudicate the underling dispute, the defendant in counterclaim,
("the Foundation"), intentionally filed the frivolous and vexatious original lawsuit in the
Middle District of Tennessee when it not only admitted, but knew or should have known that
jurisdiction and venue was improper in the Tennessee Federal Court.

68.     Despite the foregoing, ("the Foundation") intentionally suited its
original case on December 11, 2019 and thereafter ("Norris") was served by a Federal
Process Server on or about January 19, 2020.

69.     ("the Foundation's") intentional original filing in the Federal Court in
Tennessee was vexatious and meant to intimidate ("Norris") and ("the LLC") by wrongfully
instituting major litigation in a foreign forum non conveniens thereby exerting undue pressure
on a sole proprietor and prejudicing ("Norris") and ("the LLC") through the defense of
that lawsuit.

70.     ("Norris") and ("the LLC") were forced to retain local counsel in Tennessee and
in that process incurred substantial costs and counsel fees.

71.     Judge Crenshaw on April 6, 2020 issued an Order which validated
("Norris") and ("the LLC's") positon that ("the Foundation") had absolutely no
justification for filing the initial lawsuit in the Tennessee Federal Court, thus the within action
was transferred to the appropriate jurisdiction of Massachusetts.

72.     ("the Foundation's") intentional actions, as set forth above, establish an inappropriate motive which sounds in bad faith, and ("Norris") and ("the LLC") have been severely prejudiced and suffered damages as a result.

WHEREFORE, ("Norris") and ("the LLC"), plaintiffs in counterclaim, based upon the foregoing, requests this Honorable Court to grant relief to ("Norris") and ("the LLC") for its damages, costs, counsel fees, with interest thereon, for all damages sustained in defending against ("the Foundation's") frivolous and vexatious initial filing in the Tennessee Federal Court constituting an intentional abuse of process.

## GENERAL PRAYER FOR COUNTERCLAIM RELIEF

WHEREFORE, plaintiffs in counterclaim, ("Norris") and ("the LLC") request this Honorable Court to issue the following relief:

1.     Enter Judgment in favor of plaintiffs in counterclaim, ("Norris") and ("the LLC") either in the form of a Declaratory Judgment or alternatively an Equitable Order setting forth that the plaintiffs in counterclaim, ("Norris") and ("the LLC") are the rightful owners of the subject piano.

2.     Enter an Order that the defendant in counterclaim ("the Foundation") is preliminarily enjoined from any further collection efforts regarding the subject piano.

3.     Enter an Order that the defendant in counterclaim ("the Foundation") is permanently enjoined from any further collection efforts regarding the subject piano.

4.     Enter an Order that the plaintiffs in counterclaim ("Norris") and ("the LLC") are entitled to collect from the defendant in counterclaim ("the Foundation") such monetary damages, costs of defending this action, reasonable counsel fees and such other statutory and/or equitable relief as this Honorable Court deems just and appropriate.

22

5.      Enter an Order that, in addition to any other monetary award, the plaintiffs in

counterclaim ("Norris") and ("the LLC") are entitled to collect from the defendant in

counterclaim ("the Foundation") such monetary damages, costs of defending the action

filed in the Middle District of Tennessee pursuant to docket number 3:19-cv-01109, reasonable

counsel fees and such other statutory and/or equitable relief as this Honorable Court deems just

and appropriate predicated upon abuse of process.

## JURY DEMAND

The plaintiffs in counterclaim, ("Norris") and ("the LLC") respectfully demand

a trial by jury on all issues.

> Respectfully submitted,
> Robert Norris and The Piano Mill Group,
> LLC
> By Their Counsel,
>
> /s/ Daniel J. Gibson
> DANIEL J. GIBSON, ESQ.
> BBO#: 550661
> Spillane Kane Barden Attorneys
> 1140 Washington Street
> Hanover, MA 02339
> Tel.: (781) 829-9993
> djg@skb-law.com

Dated: October 7, 2020

## VERIFICATION

I have read the within Complaint and state to the best of my knowledge, allegations

contained herein are true and accurate.

Dated: October 7, 2020

ROBERT NORRIS
THE PIANO MILL GROUP, LLC

## CERTIFICATE OF SERVICE

I, Daniel J. Gibson, attorney for the Defendants and Plaintiffs-in-Counterclaim, hereby certify that on the 7th day of October, 2020 the foregoing Defendants' Answer To the Plaintiff's First Amended Complaint and Verified Counterclaim was filed electronically Notice of this filing will be sent by operation of the Court's electronic filing system to all parties of record indicated on the electronic filing receipt to the following counsel of record:

Nicholas J. Schneider, Esq. Bernkopf Goodman, LLP Two Seaport Lane, 9th Floor Boston, MA 02210 nschneider@bg-llp.com

Jonathan Jacob Cole, Esq. Sye T. Hickey, Esq. Baker, Donelson, Bearman, Caldwell & Berkowitz, PC Baker Donelson Center 211 Commerce Street, Suite 800 Nashville, TN 37201 jcole@bakerdonelson.com shickey@bakerdonelson.co

Timothy G. Harvey, Esq. Riley Warnock & Jacobson, PLC 1906 West End Avenue Nashville, TN 37203 tharvey@rwjplc.eom

Andrea E. Bates, Esq. Bates & Bates 1890 Marietta Boulevard NW Atlanta, GA 30318 abates@bates-bates.com

*Isl* Daniel J. Gibson
Daniel J. Gibson, Esq.
BBQ #: 550661
Spillane Kane Barden Attorneys
1140 Washington Street
Hanover, MA 02339
Tel.: (781) 829-9993
djg@skb-law.com