UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

Docket No. 1:20CV10682-IT

****************************************
| |
|---|
| GIBSON FOUNDATION, INC., |
| A Delaware Corporation, |
| Plaintiff, |
| |
| v. |
| |
| ROB NORRIS D/B/A THE PIANO |
| MILL, a Citizen of Massachusetts, |
| THE PIANO MILL GROUP, LLC, |
| Defendants/Plaintiffs in Counterclaim |

****************************************

## MEMORANDUM OF SUPPORT FOR DEFENDANTS AND PLAINTIFFS IN COUNTERCLAIM, ROB NORRIS d/b/a THE PIANO MILL, A CITIZEN OF MASSACHUSETTS, THE PIANO MILL GROUP, LLC'S MOTION *IN LIMINE* TO EXCLUDE AS HEARSAY INTERNAL EMAILS BETWEEN EMPLOYEES OF THE PLAINTIFF OR GIBSON BRANDS, INC.

### I.     INTRODUCTION[1]

The case at bar involves a Liberace Baldwin Piano (hereinafter "subject piano") which Mr. Norris alleges was given to him by Gibson in exchange for his removing the subject piano from the Hammerstein Ballroom in New York City in 2011. Prior to his taking possession of the subject piano, Mr. Norris expressed to his distributor at Baldwin, Tom Dorn (hereinafter "Mr. Dorn") that he wanted to "have a Baldwin concert grand to use for symphony rental and

---

[1] As an initial matter, Mr. Norris points out that certain documents which were intended to be attached as exhibits to this motion have been marked by Gibson as "Confidential Attorneys Eyes Only". Gibson contends that exhibits marked as such are subject to a confidentiality agreement between the parties. However, Mr. Norris disputes the existence of a valid confidentiality agreement between the parties which necessitates keeping those records from the public docket. In the interest of ensuring all Motions in Limine were filed by the Court's deadline, Mr. Norris has removed Exhibits 2 and 6 from this motion package and requests that the Court conduct and in camera review of all documents submitted by Gibson which are marked as "Confidential Attorneys Eyes Only" to determine whether they should be subject to confidentiality.

1

promotional opportunities".[2] Mr. Norris was responding to an offer to purchase a new version of the concert grand, but he was looking for an older model he could refurbish and repair as it would be more cost effective.[3] Mr. Norris' request was eventually passed on to Jim Felber, who worked for Gibson's Entertainment Relations department, who stated that they had the subject piano which needed to be moved out of the Hammerstein Ballroom in New York City, and he did not want it back at Gibson's New York location.[4] Mr. Norris eventually had a conversation with Mr. Felder who stated that if Mr. Norris was willing and able to move the subject piano out of the Hammerstein Ballroom in New York within a short period of time, it would be "all yours".[5] Mr. Norris accepted Mr. Felber's offer and later that week had his moving crew retrieve the subject piano and transport it back Massachusetts. At no time during any conversations Mr. Norris had with Gibson's employees prior to retrieving the subject piano did anyone from Gibson state that Mr. Norris would be taking possession of the subject piano as a loan, or on a temporary basis in general. Nor was he ever provided with any loan agreements or insurance paperwork to memorialize that Gibson was only loaning the Subject Piano to him and not giving it to him outright.

The first time Mr. Norris was told by a Gibson employee that he would need to return the subject piano to Gibson was in 2015 when Mr. Dorn requested that the piano be prepared for retrieval and transport back to New York for use in a Broadway production.[6] This contact coincidentally coincided with multiple news stories being published about the roof of Mr. Norris' building collapsing in a snow storm and that he was in possession of a Liberace Piano valued at

---

[2] See Mr. Norris's Proposed Exhibit #47, attached hereto as **Exhibit 1**. It should be noted that as of 2011 Baldwin had been purchased by Gibson Brands so employees of Baldwin are also considered representatives of Gibson as well.
[3] Id.
[4] See Gibson's Proposed Exhibit #35 attached hereto as **Exhibit 2**.
[5] See Deposition of Mr. Norris, dated June 25, 2021, attached hereto as **Exhibit 3**, at 25:16-26:7.
[6] See Gibson's Proposed Exhibit #17, attached hereto as **Exhibit 4**.

$500,000.00. Mr. Norris eventually responded that he would be unable to accommodate Mr. Dorn's request as it conflicted with an event he was planning that included the subject piano.[7] Mr. Dorn then expressed that it was Gibson's position that the subject piano was only given to Mr. Norris on a loan agreement and that they were the rightful owners.[8]

Gibson is now attempting to admit into evidence various internal email between their employees regarding the subject piano.[9] These emails clearly constitute hearsay as they are being offered as evidence that the subject piano was loaned to Mr. Norris. As explained below, these emails would not fall under the business records exception because they are not documents which are routinely created in the course of Gibson's business practice of loaning out their merchandise. Furthermore, they lack any corroborating testimony from any of their authors or recipients.

## II.   ARGUEMENT

The Federal Rules of Evidence clearly state that any out of court statement proposed as evidence of the truth of the matter asserted within that statement are to be excluded. *See* Fed. R. Evid. 802. Only through a specific exception to the hearsay rule can such a statement be admitted into evidence to prove the truth of those statements. *See* Fed. R. Evid. 803. It is believed that Gibson is seeking to admit the subject internal emails into evidence to prove Gibson believed it owned the piano, and that is was being loaned to Mr. Norris and not given to him outright. Gibson will likely argue that the emails constitute business records which would fall within the hearsay exception codified in Fed. R. Evid. 803(6). However, these emails were not created as

---

[7] See Gibson's Proposed Exhibit #20, attached hereto as **Exhibit 5**.
[8] Id.
[9] See Gibson's proposed exhibits #21-24, #36, #39 and #43, attached hereto as **Exhibit 6**; see also Exhibit 2.

part of Gibson's routine practice of memorializing loaner agreements and lack the necessary reliability to be admissible at trial.

The rational for the business records exception is that such records have inherent reliability due to the quality of their regularity in record-keeping, they are relied upon by the business in question, and employees have a duty and incentive to produce reliable records. *See* In re Oil Rig "Deepwater Horizon", 2012 U.S. Dist. LEXIS 3406 at *10 (E.D. La., Jan. 11, 2012). Towards that end courts have laid out fundamental requirements which must be met in order for documents, such as emails, to be admitted under the business records exception. In order for an email to qualify under the business records exception it (1) must have been made at or near the time of the act or event recorded, (2) been made by, or from information transmitted by, a person with knowledge, (3) was kept in the course of regularly conducted activity of a business, and (4) was made as a regular practice of that activity. *See* Ira Green, Inc. v. Military Sales & Serv. Co., 775 F.3d 12 (1st Cir. 2014). Gibson now seeks to admit internal emails which would not fall within this exception to the hearsay rule, and lack any corroborating witness testimony from the authors or recipients of those emails. Furthermore, at the time Mr. Norris obtained possession of the piano, Gibson had a regular business practice of using standard loaner agreements and insurance documentation when loaning our merchandise, however, none of those documents were created for the alleged loan agreement with Mr. Norris for the subject piano.

**A.     None of the standard forms used by Gibson in 2011 in their practice of entering loan agreements for their merchandise were created for this alleged loan agreement with Mr. Norris because they intended to give Mr. Norris the piano to own**

At the time Mr. Norris was communicating with Gibson about taking possession of the subject piano, Gibson had a regular practice of using standardized loaner agreements when they loaned out a piece of their merchandise. Patrick Davidson, who is an employee of Gibson,

4

testified that he has personally reviewed standard loaner agreements that Gibson uses when loaning out their instruments.[10] He further testified that it is an important company protocol at Gibson that a loaner agreement is filled out for all instruments that are loaned out so that a paper trail is created.[11] Gibson also noted in their internal communications that they were unable to locate required insurance information from Mr. Norris after his roof collapsed, and that going forward they needed to ensure locations where instruments were loaned out added Gibson as a covered insured for the value of their merchandise.[12] Furthermore, Gibson has produced examples of the Loaner Agreements and Release paperwork they require when loaning out their instruments.[13] This all clearly illustrates that Gibson had a standard record keeping protocol for loaner agreements which did not consist of using emails as a way to memorialize these transactions.

By Gibson's own admission, there was never any formal loaner agreement created with Mr. Norris, nor was he ever required to provide Gibson with insurance information so they would be covered in the event the piano was damaged or destroyed in any way.[14] Furthermore, Gibson's President, Cesar Gueikian, has testified that all documents relevant to the subject piano which are in Gibson's possession have been produced to Mr. Norris's counsel.[15] To date, no formal loan agreement, releases or insurance paperwork memorializing a loaner agreement between Gibson and Mr. Norris for the subject piano has been produced. They have not been produced because none exist.

---

[10] See Deposition of Patrick Jason Davidson, dated August 20, 2021, attached hereto as **Exhibit 7**, at 20:2-13.
[11] Id. at 40:6-14.
[12] See Gibson Proposed Exhibit #22 contained within Exhibit 6 of this motion.
[13] See Gibson Proposed Exhibit #3 and #12, attached hereto as **Exhibit 8**
[14] See Gibson Proposed Exhibit #22 contained within Exhibit 6 of this motion; see also Exhibit 4.
[15] See Deposition of Cesar Gueikian, dated September 30, 2021, attached hereto as **Exhibit 9**, at 40:5-21.

The simple explanation for this is that Gibson was giving Mr. Norris the piano because they would have needed to dispose of it otherwise. As Mr. Norris testified to, it is very common in his business that he will get requests from businesses or people who want to give him pianos simply because they are unable to sell them or keep them any longer.[16] Furthermore, Mr. Davidson testified that he is aware of instances where Gibson has would dispose of older instruments.[17] This all suggests that Gibson's intention was to give Mr. Norris the subject piano to own in exchange for his services of removing it and transporting it from the Hammerstein Ballroom in New York City in 2011.

### B. The authenticity of those internal emails is in question because the authors and recipients will not testify, and as such the admission of the emails would cause Mr. Norris undue prejudice.

The authenticity of the internal emails Gibson is seeking to admit into evidence is questionable because none of the authors or recipients will testify. In their initial disclosure, Gibson listed three individuals, Tom Dorn, Jim Felber and Tracy McDaniel, as potential witnesses who might have relevant information in this case, and who were involved in those internal email conversations.[18] Their disclosure specifically stated that those witnesses could be contacted through counsel.[19] When Mr. Norris's attorney requested to depose Tom Dorn, Jim Felber and Tracy McDaniel, Gibson's attorneys responded that they were unable to locate those individuals. As of this date, none of those individuals have been deposed and none are listed as potential witnesses at trial by either party. For this reason the internal emails must be viewed with an added layer of cynicism. For allowing those to be entered into evidence at trial would

---

[16] See Exhibit 3 at 72:10-74:2.
[17] See Exhibit 7 at 46:4-15.
[18] See Gibson's Initial Disclosure, dated May 28, 2020, attached hereto as **Exhibit 10**.
[19] Id.

cause Mr. Norris undue prejudice by preventing him from cross examining the authors and recipients about the contents of those emails.

### III. CONCLUSION

Wherefore the stated reasons, Mr. Norris respectfully requests that this Honorable Court **ALLOW** his Motion in Limine to Exclude as Hearsay the Internal Emails between Employees of the Defendant or Gibson Brands, Inc.

Respectfully submitted,
For the Defendants, Rob Norris d/b/a
The Piano Mill and The Piano Mill Group, LLC

/s/ Daniel J. Gibson
DANIEL J. GIBSON, ESQ.
MARTIN SABOUNJIAN, ESQ.
BBO#: 550661
BBO#: 703893
SKB, Attorneys
1140 Washington Street
Hanover, MA 02339
Tel.: (781) 829-9993
djg@skb-law.com
ms@skb-law.com

Dated: September 27, 2022